Our final case this morning is number 222044 Ikorongo Texas LLC v. Bumble Trading. Okay, Mr. Hall. Thank you, Your Honor. May it please the Court. If this Court applies the same original patent analysis that it has for decades, the same original patent analysis that the U.S. Supreme Court applied in Industrial Chemical, the same analysis that this Court applied just a few months ago in Ray Flotenborough, then under that analysis, appellants should win. We clearly and unequivocally disclosed in our original patent an invention that tracks and shares visited geographic location data separate and apart from any other data and does so using satellite-based technologies. Okay, so what does the word visit mean in the reissue claims? You're arguing, as I understand it, on the infringement issue that it includes identifying somebody's place of residence, right? I don't think that that's necessarily the argument that we're making. I think the argument that we're making is that the visit is where a person has been with a location-aware device. I think what Bumble... That would include somebody's residence, right? Sorry, Your Honor? That would include the place where somebody resides, right? If they had been at that place with a location-aware device, yes, it would include that. Okay, but that seems to me to be something that's not remotely disclosed in the original patent specification because it's talking about sharing experiences, visits, in other words, a temporary visit to a restaurant or some other place as being new experience. It's not talking about identifying the location of a cell phone at somebody's residence. I completely disagree, Your Honor. I think that it is very much about identifying where the user has been with that location-aware device, which might be the person's place of residence. It may be their home. It may be that city. The residence is an experience that they're transmitting to their buddies? The visit, the where I have been with the location-aware device is the experience. That's what our patent says if you look at columns four through five. The visit to the location is the experience. Even though that's not a new experience. Exactly. It's not a qualitative analysis. It doesn't have to be an exciting experience, right? Being on the highway with a location-aware device is an experience. Living somewhere is an experience. Exactly. Being somewhere, and in this case it's being somewhere with a location-aware device. Where does the original specification say that living somewhere is an experience? The original specification says that visiting a location, being at a location with a location-aware device is the sort of experience activity that we're tracking. How do we know that the use of the word visit in that context is talking about visiting a place with a geographic location or a geolocation, as you would say, compared to, like, saying someone's at Target. It could be any Target in, you know, anywhere. in the country, as opposed to this person's in the Target at Arlington. So I think there's a couple of responses to that. The first, I'd just like to point the court specifically to some places in the specification where it specifically talks about using geographic locations. So the first place would be if you look at column three, lines eight, excuse me, nine through thirty-eight. Which patent are you looking at? Oh, the original patent. The 139 patent, that's right, Your Honor. Which is where... Do I remember correctly that the specifications between these different... between the reissue and the patent are largely unchanged? That's correct. The specification remains unchanged. The claims are different. The specification here specifically talks about... Tell us what column you're on again. Column three. This is at JA-264. So this column in particular, it's distinguishing the visited location database. What lines are you looking at? I'm going to focus right now on starting at line 26 where it says the VLD could also store geographic information regarding the location such as geocoded data. And before that, what it's talking about is storing geographic information via where a Bluetooth signal has been received, the Bluetooth hotspot that it interacts with. Which is, again, a precise location. Not just any target in the United States but it would be this target with this Bluetooth access point. And then it also specifically goes further and it talks about the other methods of tracking location data. It talks about GPS, it talks about dGPS, both of which are satellite-based technologies. That's tracking as opposed to sharing. That's right. That's going to be the second part of my answer. I'm glad that you brought me there. And that all goes to the choice that either the creator has or the user has depending on what embodiment the creator is practicing about how to share that information. I think some of the best places to look at that would be if you look at Figure 9. I recommend looking at the reissue for Figure 9. Isn't that a much better view? Yes, I was about to say that. The figures are the same. The reissue, the photo of Figure 9 on JA-284 is probably the better photo for that. But also the description of Figure 9 I think is important. The description of Figure 9 discusses specifically make sure I'm at the right column here. This would be column 9, JA-267. For instance, the name of a restaurant may be used instead of its Bluetooth access point. So again, we're talking about alternatives here. What lines are you looking at? This would be line 41 through 43 of column 9 in the 139 patent, Your Honor. Again, this is the description. Where does this talk about being concerned about cell phone location as opposed to places visited by the owner of the cell phone who is acquiring new experiences by visiting? And visiting is defined in the dictionary as a temporary relocation or going to a place temporarily. I'm glad you asked that, and the answer is everywhere in the patent. Everywhere in the patent. Let's just try one place. Where does it talk about tracking residents? Well, it specifically talks about if your residence is where you've been with a location-aware device, that would be tracked. The location-aware device, again, where I was going to point to, let's start with the title. It's a method and apparatus for selectively sharing and passively tracking communication device experiences. And I think maybe the best place to answer your question, Your Honor, let's look at Figure 23. Again, this is in the original patent and the discussion of Figure 23, which occurs at Column 16, Lines 49 through Column 17, Line 26. And what it's specifically talking about there, and just to put the finest point I think I possibly can on it, if you look at Line 53 of Column 16, it says, it describes, and this is important. It's important because this is the sort of disclosure that this Court has been looking for in cases like Amos, in cases like Enright-Flotengrill, and in cases like Enright-Peters. It says that what is necessary is for the user to have a wireless device which supports a location detection service. It then says that the method of the location tracking... But where does it say that the purpose of the invention is to track the location of the device as opposed to share experiences with buddies? I think both, Your Honor. The tracking of the visited locations with a location-aware device, that is what the invention does. Those visits to places in the physical world, those are experiences based on any definition of the word. And the invention is both the tracking of that visit with the location-aware device and selectively sharing information about that experience with one's buddies. And that, again, that concept, what I just walked through is mirrored in section after section after section. Can I ask where it says it is necessary for the user to have a wireless device, 2354? Are you reading that sentence as meaning for the entire invention and all of the patents? I think, no, I'm reading that as that is the preferred embodiment or that is the embodiment that's being discussed here and demonstrated in figure 23. Right, because figure 23 says this extends the prevention to cellular telephones. Precisely. But that is exactly what the reissue claims here are about. I just read you a passage from the specification that directly talks about, discloses the very sorts of things, the very sorts of elements. But that discloses that that's a necessary part of the invention. It doesn't disclose that that's what the invention is about. And what the specification describes is that the invention is about sharing experiences. I have difficulty understanding how that reaches a situation in which it tracks a cell phone at somebody's residence. If you go to 5 of the original specification, because I think what Your Honor is asking for is show me that visiting a place with a location-aware device is an experience. But I'm telling visiting in the dictionary sense, and we rely on plain and ordinary meaning, is a temporary relocation to a particular place. You don't visit your permanent residence. I think I would beg to differ with that Your Honor, I think that visit as defined would be going to any place. That's how we define it in our patent. How I read the district court's opinion was to say that what is not in the original specification is the emphasis on using this invention solely for the purpose of tracking somebody's location. And that instead there are many different things that are described as being valuable to share with your buddies, including what websites you went to, what you liked, what you didn't like. Did you rate something? Did you comment on something? Did you give something in emoticon? Did you visit somewhere? Did you download something? Did you watch something? And that visit is just one of many different things that are contemplated. Why is it now that you should have claims that are just focused on visiting or location, and specifically even geographic location, which seems to be a subset of location? I think the answer is because we disclosed that that was an embodiment of our original invention. Where do you disclose that tracking location alone and sharing location alone is an embodiment of your invention? I'm glad you asked that. So let's turn again to column 3 of the original patent. This is at JA-264. Starting at the end of line 23. It says the user of the Bluetooth device could have the same options for providing additional information regarding the location as for URLs. If you go back to column 2, it tells you what that additional information is. It's the comments, it's the ratings, it's the emoticons, it's those things. But what that sentence right there tells you is, and Judge Saul, I'm glad you asked me this question because I remember you saying something similar to this in one of the previous arguments today. The insertion of the word could there teaches that not just the user could have those options, it's that the creator, the person practicing aspects of this invention could provide, could choose to provide those options to the user, meaning that must also teach that this device could be practiced without those options. You do not have to provide that optionality to the user to provide that additional information about the experience. It could exist solely... So what you're saying is the disclosure of saying the user, and I think this was in your brief, because the user could just visit places and never review, comment, or do the other things regarding that location, that information would still be tracked. That doesn't quite answer my question because my question was where is it disclosed that in addition to tracking URLs and reviews and comments on URLs and emoticons and watching of movies and reading of books and all these different things that a person could do, that you are just going to throw that aside and all you're going to do is provide shared locations. Two places. Again, knowing that this is, boy, it's got to be a clear and convincing disclosure for this requirement, right? It's different than written description. I'm glad you said that because now there's three things I really want to focus on. I know I'm running out of time so I'm going to try to do them quickly. So first I'm going to point your honors to a place in the specification. This is, again, this is column two, starting at line 45, the data compiled section. Specifically says that aspects of the present invention include building and making accessible various databases and combinations of databases indicating that the VUD and the VLD can be practiced both independently and separately. The other way that we know that is if I can turn your attentions to the originally issued claims, which we think it was legal error for the district court here not to consider, but if this court looks at the original claims, if you look at claim one, independent claim one, claim one is about practicing this invention with the combination of the VUD and the VLD. So, Judge Stoll, to your question, it's specifically about the combination of tracking the URLs and the visits and the emoticons and all of those things. Claim 32, however, is just about visited location data. It is and back to your original question, how do I know that claim 32 tells you that too. It is a method for sharing computer user experiences including. The only data that's tracked here is collecting and sharing visited location data using a client-side application while visiting a location with a location-aware device that records the visited location. And then the last phrase of that claim is posting at least a portion of the user's what visited location data for buddies to If somebody sold a device that helped you track a lost cell phone by the location of the lost cell phone, these reissue claims would cover that? That's a good question. It would certainly cover the what I'm going through in my mind. What is required in our patent, the way that I read it, is that the user be at the place with the computer aware device. If the user was at the location where the device was found, then yes, I think it would cover that. Okay. If there are further questions, I think we're out of time. We'll give you a minute for rebuttal. Thank you, Your Honor. I appreciate that. Mr. Graubart. Good morning, Your Honors. Noah Graubart on behalf of Appellee. May it please the Court. This Court's case law compels affirming the District Court's summary judgment of invalidity under Section 251's original patent. Can I ask you specifically to get right into this? Please. What is your response on the reliance on Claim 32 of the original patent as issued? Why couldn't that be something that they could rely on? There's, I think, several answers to that, Judge Stoll. So first of all, I think it's a misnomer to call that the original claim. I understand. It's not an original claim that would provide written description support. That's right. And for the same reason, because it was only added many years after the original patent application was filed, there's nothing original about it. It doesn't tell us what the original invention was as described in the specification. Policy-wise, though. Policy-wise. Policy-wise. Because the whole purpose, I think, of the policy behind it is that you don't want somebody to get a reissue like a decade later. Sure. Right? And be able to say, well, there's this new great technology and I have this kind of, you know, I can pluck out of my specification, put things together to try to cover this new technology. But here, you've got this Claim 32 that was in the original patent. I mean, I'm not saying it discloses it, but why shouldn't you be able to go back and look at the claims that are in the original patent before anyone even seeks a reissue to see what was encompassed by the inventor? I think the long and the short of it is, Your Honor, that the public is entitled to rely on the patentee's statement in its reissue application that those claims, including Claim 32, were erroneous. There was something wrong, something defective, and they surrendered them. So just as much as the public is entitled to rely on the original matter that's in the specification as filed, they're equally entitled to rely on the patentee's affirmative characterization of that as, that's not my invention. And that's why in Intaris, the Court said, by definition, what's in the reissue, what's in the originally issued claims cannot provide a clear and unequivocal disclosure of the exact embodiment claimed on reissue. Because if it was, you wouldn't need to have sought reissue. It would already be there. And here's where, in fact, I think the rubber meets the road on that point in this case. And this goes to some of the questions that Your Honor and as well as Judge Dike asked to my friend, Mr. Hall. And that's that Claim 32 of the originally issued patent doesn't include the word geographic. And it's a very important distinction, I think, here that permeates throughout all of the arguments. And that's because none of the issued claims and certainly none of the original claims use the word geographic. They may use the word location or location data. But the specification distinguishes between those two. At column 3, lines 25 to 27. Just to make sure I understand what you're saying. What you're saying is that when you see visiting location data here in the context of this patent specification, that means something more general like my target example. Precisely. That's exactly how I read it, Your Honor. That a location can be going to target. An example I thought of involving this court would be 717 Madison Place, the address of this building. That might be considered geographic data. But the Court of Appeals for the Federal Circuit would be the location. I can have an experience if I come here and argue at this court. But the geographic coordinates alone, the address, the latitude, longitude, that's not an experience. That's a just visiting a location. It's something more specific. At column 3 of the original patent, lines 25 to 27, it says that the VLD, the Visited Location Database, also could store geographic information regarding the location. That's after having described using or collecting location information. This is your argument that those words mean something. They must mean something. Otherwise, the patentee would not have called claim 32 erroneous, canceled it, and added that word geographic. That's, I think, the other reason that claim 32 just simply doesn't get the patentee there. There's one more reason, I believe, that claim 32 doesn't carry the day. That's because, as this court said in Siafi and in Intaris, the original patent needs to provide the exact embodiment, a clear and unequivocal disclosure. Most of the elements claimed on reissue, in addition from the word geographic, which is, I think, a different concept, are not in claim 32. There's nothing about quantifying relative influence. There's nothing about using satellite-based methods of collecting geographic data. So even if we just say, fine, we'll look at claim 32, which I think is wrong for several reasons, including that it would require overruling in Intaris, it simply doesn't satisfy the standard that is set. And the Supreme Court clarified in Industrial Chemicals that when it's said it's not enough that the original patent could suggest or suggest the claims claimed on reissue, it needs to have this clear and unequivocal disclosure. And what that means is this is not the same thing as the 112 analysis. We need to have the exact embodiment. We know it's a higher standard. This is 112+, if you will. And so the kind of coming full circle to the point about geographic location being different from location, I think that feeds into what I think is the crux of Aikarongo's appeal, is the argument that visited geographic location data is somehow a form of experience. And I don't think, putting aside even the fact that there's a difference between location and geographic location as used in this patent, I don't think that that's correct either under the ordinary meaning of these words as used in ordinary language, in everyday language, or as used in this patent. And that's because, first of all, as I said, one can have an experience at a location, but the geographic location itself is not the experience. Do you have certain language in the patent you're relying on for that proposition? I think the most telling disclosure on that point is at column 18. And there, the patent makes a distinction. It juxtaposes experience data and location data. So first, at the paragraph beginning at line 38, it says a portion of the user's computer usage experiences are tracked and reported. Then it goes on later in the paragraph and gives examples of those computer usage experiences, like viewing URLs, downloading files, etc. And then in the very next sentence at the beginning of the next paragraph, it says, in addition to computer usage experiences, mobile communication device locations can be tracked. So even if for some reason, under the ordinary meaning in everyday language, a location itself, as Judge Sykes said, my residence, could be considered an experience, that's not the way the patentee used the terms in this patent. And I think that, as we said in a brief, I believe this is a new claim construction argument that's waived, but even putting that aside, on the merits, I think it's compelling that both in the everyday usage of the term as well as used in the patent, a visited geographic location, let alone a location, is not an experience. And as a result, I think this case lines up very nicely with a line of cases, starting with industrial chemicals, going on to Antares and Forum U.S., and then most recently in the float and grill case. And this is a concept we identified in our brief, but I think was an opinion in float and grill, and that's that when there's an element of the original invention, as described in the original specification, that I believe the words the court used in float and grill are necessary, essential, or critical, and the patentee does not include that element in the reissue claims, then those claims are invalid under Section 251. In industrial chemical, it was the introduction of water as a catalyst. That wasn't in the reissue claims, the Supreme Court held them invalid. In Antares, it was the notion of a jet injector, which was in all the embodiments in the specification, and was not claimed on reissue. I'm not entirely clear what your position is. Let's assume that the reissue claim said a method for tracking restaurant visits. And what it disclosed was recording restaurant visits by individuals and sharing that information with buddies. Would that be beyond the scope of the original invention or not? I believe that would be beyond the scope. Why? Because the original invention, as described in every embodiment, requires more than the fact that you visited a restaurant. It requires the ability to collect and share data about that experience, whether it's comments, ratings, thumbs up, thumbs down, emoticons or the other example the patent gives, and simply saying I've been to the whatever the name of the place, the Old Ebbet Grill down the street, that would not be the experience data that's required in the original invention. But I think even further, that hypothetical is a little different than the claims here because of the distinction between location data and visited geographic location data, which is an entirely different concept even more. And then returning to Antares, as I said, that had the jet injector that was not in the reissue claims. Forum U.S., similarly, there was consistently throughout the specification, the invention required these arbors to hold workpieces, and when the reissue claims did not include arbors, this court found that they were invalid. And float and grill is just the latest example of this same concept, which is where the original invention required magnets to hold the grill to a flotation device and the claims did not require those magnets, and this court said that it was invalid. And it went out of the way to explain that it does not require, the original patent requirement does not require that the specification have some affirmative language defining a particular element as critical or essential or necessary. This is not like the, for example, the disclaimer context in claim construction where the burden would be on us to identify that affirmative statement. Instead, I think in keeping with the fact that the Supreme Court and this court has held that section 251 is a higher burden, it's a higher standard, the court said we can infer that from the context, from the fact that it is in every embodiment. And here the thing that's in every embodiment is something more than what's in your hypothetical Judge Dyke. It is the collection and sharing of information about that experience at the restaurant. The comments, the emoticons, the always doing more than just that. I think unless the court has any further questions, I'll cede my time. Thank you very much. Thank you, Your Honor. I'm going to try to be brief and I'm going to throw some record citations at you in rapid fire. I hope that's okay. So there's a couple of things that I really want to point out. I think the first of which is this concept that location is not the same as geographic location. If you read the text of the 139 patent it is very clear that when we're talking about a location we are talking about a place in the physical world i.e. geographic location. In fact, we use the word location 133 times in the original patent. And all but one of those is in reference to the kinds of locations tracked by the VLD which are the locations in the physical domain where in the real world on a globe a person visits using a location aware device. So when we say location in this patent, we do mean geographic location. Second, I think the crux of my friend's argument is this concept that the synchronon of our invention is all of the comments, the ratings talking about the experience that I had at a place. That is not true. That is just the opposite of what our patent teaches is the crux of our invention. What is critical here, and this is all over the place from where I started from column 3, lines 23 through 26 when I said that those options of adding the additional information could be added, start there. And then we go to figure 23 where it specifically talks about in the description of it on column 16 through 17, what it says is necessary is a person possessing the location aware device tracking the location where they've been. An embodiment of the invention can continue to monitor for things like comments and ratings, but those things aren't necessary. Indeed, at the end of that discussion it says fewer or more fields related to those activities can be added. Those are all things on top of the visit to the physical place in the world. And then if we look specifically at column 5, lines 5 through 15 when it's talking about the activities that are tracked, it says a user visits a location or other location, excuse me, a user visits a restaurant or other location. A user who visits may, not does, not must, may respond to their experience. A user's response may be to rate, comment, assign an emoticon, send information to a buddy, download data or bookmark an item. What is very clear from our patent is that we've disclosed that these other things, those are the options. And if you juxtapose that with this court's decision in Enright Amos Enright Amos survives with one sentence. I think we're out of time. Thank you. Thank both counsel. The case is submitted.